UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

| | |
|---|---|
| W.C. and S.C. on behalf of R.C., <br><br> Plaintiffs, <br><br> v. <br><br> SUMMIT BOARD OF EDUCATION, <br><br> Defendant. | Civ. Action No. 06-5222 (KSH) <br><br><br><br><br> **OPINION** |

**Katharine S. Hayden, U.S.D.J.**

**I. INTRODUCTION**

W.C. and S.C. have brought suit against the Summit Board of Education ("Summit") on behalf of their daughter R.C., who is classified as eligible for special education and related services based upon a diagnosis of autistic spectrum disorder. They allege violations of the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, Section 504 of the Rehabilitation Act of 1973 and the New Jersey Special Education Law, N.J.S.A. 18A:46-1 *et seq.* and the New Jersey Special Education Administrative Code, N.J.A.C. 6A:14-1.1 *et seq.* The parties are before this Court pursuant to 20 U.S.C. § 1415(i)(2)(A), which gives any party who has been "aggrieved by the findings" of IDEA administrative procedures "the right to bring a civil action…in a district court of the United States, without regard to the amount in controversy." They seek relief from the August 2, 2006 decision of Administrative Law Judge Richard McGill. The parents asserted during that proceeding, as they do here, that Summit failed to provide a free and appropriate public education ("FAPE") for R.C. and that Summit's failure

1

entitles them to reimbursement for unilaterally placing her in a special education program. Judge McGill concluded that the parents were entitled to reimbursement but reduced that reimbursement by half based on *N.J.A.C.* 6A:14-2.10(c), which allows for a reduction in reimbursement for violations of the regulation's notice provisions or upon a judicial finding of unreasonableness with respect to actions taken by the parents. Currently before this Court are a summary judgment motion by the parents and a cross-motion for summary judgment by Summit.

## II. BACKGROUND

As Judge McGill noted, most of the facts in this case are not in dispute. R.C. was born on November 17, 2001. W.C. and S.C. o/b/o R.C. v. Summit Bd. Of Educ., N.J. Office of Admin. Law Dkt. No. EDS 1547-05 at 3 (Aug. 2, 2006). When she was about two-and-a-half years old, her parents became concerned with her ability to communicate and socialize. Id. In the spring of 2004, her parents obtained a referral to an early intervention program, where a representative evaluated R.C. on July 22nd and informed her parents that she might be autistic. Id. After Dr. Arnold P. Gold diagnosed R.C. with autistic spectrum disorder on July 28th, her parents contacted the school district and were told to send a letter requesting an evaluation. Id. On July 30, 2004, S.C. sent the letter, a copy of which was retained by W.C. and S.C., by fax and regular mail to Debra Kosak, a Summit supervisor of special education. Id. Kosak opened a case for R.C. and assigned Iris Diamant to the case, who scheduled an evaluation planning meeting on August 16th. Id. While Summit prepared for the August 16th meeting, the early intervention program developed an Individualized Family Service Plan ("IFSP") dated August 5, 2004, which provided for ten hours per week of applied behavioral analysis ("ABA") therapy subject to an increase in services to twenty hours per week within two weeks. Id. at 4. The IFSP

was never implemented, however, because R.C.'s parents did not identify a therapist they found to be satisfactory. Id.

Without notifying Summit, W.C. and S.C. began contacting schools in an effort to obtain an immediate private placement after concluding that immediate and intensive ABA therapy was the best approach based on their own research and the advice of Dr. Gold. Id. On August 16, 2004, the evaluation planning meeting took place as scheduled; however, early intervention case coordinator Sangeeta Mehta did not attend the meeting because S.C. would not sign the release allowing for Mehta's participation. Id. The parties cooperated throughout the meeting, although W.C. and S.C. did not tell Summit's representatives that they were seeking a private placement. Id. It was agreed that Summit personnel would conduct further evaluations and that Dr. Gold's report, which W.C. and S.C. brought up at the meeting, would also be considered in drafting the individualized education program ("IEP") due on November 14, 2004. Id. When W.C. told Kosak that his own research indicated that autism needed to be treated as soon as possible, she informed him that Summit would not provide services until R.C. turned three. Id. After the August 16th meeting, W.C. and S.C. continued to take unilateral action to secure a private placement for their daughter. W.C. arranged an evaluation, without informing Summit, with Dr. Bridget Taylor, a psychologist, that resulted in a September 7, 2004 report that W.C. and S.C. did not immediately share with Summit. Id. at 5.

On September 23, 2004, Dr. Kevin Brothers, the executive director of Somerset Hills, a state-approved school for children with autism located approximately 25 miles away from R.C.'s home, id. at 9, contacted R.C.'s parents to notify them that she had been accepted to Somerset Hills. Id. at 5. On September 28th, W.C. and S.C. sent a letter by fax and certified mail to inform Summit that R.C. had been accepted by Somerset Hills and to request that it consider the school

3

for their daughter's placement once she turned three on November 19th. Id. R.C. began classes at Somerset Hills on September 29th. Id. Dr. Jane Kachmar-Desonne, Summit's Director of Special Education Services, sent W.C. and S.C. a letter dated October 5th, advising them that Summit would continue to develop the IEP due on November 14th. Id. R.C.'s parents continued to participate in the development of the IEP and attend the evaluations as scheduled. Id. at 5-7. And R.C. continued to attend Somerset Hills.

As planned, the parties met on November 12th to determine R.C.'s eligibility for special education services and discuss the IEP. Id. at 7. Since Summit had not yet secured a placement for her, the IEP presented at the meeting provided for 10 hours of "home instruction in the interim of being placed." The "interim" period began November 17, 2004, and ended June 24, 2005. Id. at 8. R.C.'s parents again asked that Somerset Hills be considered for her placement, but Summit determined that it would only consider three schools, and Somerset Hills was not one of them because it did not offer language therapy and occupational therapy, and was one hour travel time from R.C.'s home. Id. When asked to sign a record release form necessary for Summit to pursue placement in the eligible schools, W.C. and S.C. said that they would take the release home and consider it. Id. The parties dispute whether W.C. and S.C. ever signed and returned the release. Id. at 46. There is no dispute that the cooperation between R.C.'s parents and Summit quickly deteriorated after the November 12th meeting. R.C.'s parents retained an attorney who informed Dr. Kachmar-Desonne by a letter dated November 24, 2004, that Summit had failed to develop an adequate IEP and that they were seeking reimbursement for the cost of placement at Somerset Hills.

On January 7, 2005, R.C.'s parents filed a request for a due process hearing on her behalf with the Office of Special Education. The matter was transferred to the Office of Administrative

Law on February 7, 2005, for a hearing pursuant to 20 U.S.C. § 1415 and 34 C.F.R. § 300.507. The due process hearing commenced on March 22, 2005, and Judge McGill issued his decision on August 2, 2006. This action followed.

### III. STANDARD OF REVIEW

In an IDEA case, this Court must review the administrative law judge's decision under a modified version of *de novo* review. S.H. v. State-Operated Sch. Dist. of the City of Newark, 336 F.3d 260, 269-70 (3d Cir. 2003). Under this standard, the Court "must make its own findings by a preponderance of the evidence" but "must also afford 'due weight' to the ALJ's determination." Shore Regional High Sch. Bd. of Educ. v. P.S., 381 F.3d 194, 199 (3d Cir. 2004). The Third Circuit has explained that 'due weight' means that the "factual findings from the administrative proceedings are to be considered prima facie correct," so that "if a reviewing court fails to adhere to them, it is obliged to explain why." S.H., 336 F.3d at 271. Although the Court must show deference to the ALJ's factual findings, it reviews the ALJ's legal determinations *de novo*. K.H. v. N. Hunterdon-Voorhees Reg'l High Sch. Hunterdon Co., Civ. No. 05-4925, 2006 U.S. Dist. LEXIS 55522, at *11 (D.N.J. Aug. 10, 2006) (Thompson, J.); see also Gutin v. Wash. Twp. Bd. of Educ., 467 F. Supp. 2d 414, 422 (D.N.J. 2006) (Irenas, J.).

### IV. DISCUSSION

Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living," 20 USCS § 1400(1)(A), and "to ensure that the rights of children with disabilities and parents of such children are protected." 20 USCS § 1400(1)(B). To that end, the IDEA requires participating state and local educational agencies to provide special education and

5

related services at no cost to the parents of a disabled child "if such children are placed in, or referred to, such schools or facilities by the State or appropriate local educational agency." 20 U.S.C. § 1412(a)(10)(B)(i). The Court must, however, decide this matter under the legal standards addressing reimbursement for a unilateral private placement, because as Judge McGill concluded ― and the Court agrees with this factual determination ― the record here demonstrates that R.C. was not placed in or referred to Somerset Hills by Summit and her parents gave no notice of R.C.'s unilateral placement at Somerset Hills until after she was accepted and enrolled.

Where the parents of a disabled child seek reimbursement for a unilateral placement, this Court must first determine whether the IEP offered by the state afforded the student a FAPE. School Committee of Town of Burlington, Mass. v. Department of Educ. of Mass., 471 U.S. 359, 370 (1985). The burden is on the state to demonstrate that a FAPE was offered. Oberti v. Board of Educ. of Borough of Clementon School Dist., 995 F.2d 1204, 1219 (3d Cir. 1993). To meet this burden, it must establish that it implemented the procedures required by the IDEA and that the IEP offered was "reasonably calculated" to enable the disabled child to receive "meaningful educational benefits" proportionate to her "intellectual potential." Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 247 (3d Cir. 1999). If the state did not provide a FAPE, it may be required to reimburse the costs of a unilateral placement. T.R. v. Kingwood Twp. Bd. of Educ., 205 F.3d 572, 577 (3d Cir. 2000). But N.J.A.C. 6A:14-2.10(c) allows for the denial or reduction of reimbursement where the parents violated the regulation's notice provisions or upon a judicial finding of unreasonableness with respect to actions taken by the parents.

The threshold issue presented by Summit, that reimbursement is barred by a "previously received" requirement, requires this Court to examine the interplay between federal legislation

and state regulations implementing those mandates. It is undisputed that R.C. never attended a public school in the district before her placement at Somerset Hills. Summit argues that reimbursement for a unilateral placement cannot be granted unless the student previously received special education and related services from the district of residence. It bases this assertion on the language found in N.J.A.C. 6A:14-2.10(b), which echoes 20 U.S.C. § 1412(a)(10)(C)(ii) and provides:

> If the parents of a student with a disability, who previously received special education and related services from the district of residence, enroll the student in a nonpublic school, an early childhood program, or approved private school for the disabled without the consent of or referral by the district board of education, an administrative law judge may require the district to reimburse the parents for the cost of that enrollment if the administrative law judge finds that the district had not made a free, appropriate public education available to that student in a timely manner prior to that enrollment and that the private placement is appropriate.

But 20 U.S.C. § 1412(a)(10)(C)(ii) differs from N.J.A.C. 6A:14-2.10(b) in a very significant respect, foreclosing the argument that Congress ever intended to require that a preschool-aged child have "previously received special education and related services from the district of residence" in order to be reimbursed for a unilateral placement. Keeping in mind that "if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously," Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S. 1, 17 (U.S. 1981), the Court notes that New Jersey's regulation specifically refers to "a nonpublic school, an early childhood program, or approved private school," whereas the federal statute only mentions "elementary school or secondary school." The "early childhood program" language found in the state regulation applies to preschool-aged children, while the "elementary or secondary school" language from the federal statute does not apply to preschool-aged children and therefore does not place any condition on reimbursement for preschool costs.

In School Comm. of Burlington v. Department of Ed. of Mass., 471 U.S. 359 (1985), the Supreme Court determined that the IDEA, because it directs that a court "shall grant such relief as [it] determines is appropriate," 20 U.S.C. § 1415(i)(2)(C)(iii), confers broad discretion on the court to order school authorities to reimburse parents for the costs of private placement if it ultimately determines that such placement was proper under the Act. Burlington established that this Court does not derive its authority to reimburse costs for private preschool placement from 20 U.S.C. § 1412(a)(10)(C)(ii), but instead has broad discretion under 20 U.S.C. § 1415(i)(2)(C) to fashion the relief it deems appropriate, including reimbursement for preschool costs. 20 U.S.C. § 1415(i) creates the general right to appeal an IDEA decision to the district courts and defines the scope of judicial discretion, while the provisions of 20 U.S.C. § 1412(a)(10)(C)(ii) appear to limit that discretion only where parents seek reimbursement for "elementary school or secondary school." Furthermore, New Jersey's regulations cannot override the procedural safeguards of the IDEA itself by adding the "early childhood program" language. If the procedural safeguards of 20 U.S.C. § 1415 conflict with state law, the applicable federal law is controlling. Tokarcik v. Forest Hills School Dist., 665 F.2d 443, 449 (3d Cir. 1981). Here, Summit's position would place federal law and the state regulations in conflict, and thus the Court concludes, as did Judge McGill, that the holding in Burlington controls.

Summit also points to several cases that it reads as supporting its position; however, these cases are immediately distinguishable because they did not involve a preschool-aged student. In Greenland Sch. Dist. v. Amy N., 358 F.3d 150 (1st Cir. 2004), the parents unilaterally enrolled their daughter in a private school after she had completed the fourth grade. In T.H. v. Clinton Twp. Bd. of Educ., No. 05-3709, 2006 U.S. Dist. LEXIS 40358 (D.N.J. filed June 16, 2006), it was not until after A.H. had completed second grade that her parents sought special education

8

and related services for her.  And Judge Chesler in J.B. & D.B. v. Watchung Hills Reg'l Sch. Dist. Bd. of Educ., No. 05-4722, 2006 U.S. Dist. LEXIS 250 (D.N.J. filed January 5, 2006), noted that courts should use a different standard for the preschool reimbursement context:

> [C]hildren who are enrolled in special education programs before reaching school age should not be denied reimbursement under IDEA upon reaching school age simply because they were never enrolled in or receiving benefits from the public school district prior to seeking reimbursement because: "Such a construction of the IDEA would produce the absurd result of barring children from receiving a FAPE because their disabilities were detected before they reached school age."

Id. at *18-*19 (quoting Justin G. v. Bd. of Educ., 148 F. Supp. 2d 576, 587 (D. Md. 2001)).  This Court relied on Judge Chesler's reasoning in A.Z. v. Mahwah Twp. Bd. of Educ., No. 04-4003, 2006 U.S. Dist. LEXIS 22305 (D.N.J. filed March 30, 2006), when concluding that a previously received requirement "would eliminate reimbursement for children whose disabilities are diagnosed when they are too young to have attended public schools in the district."  Id. at *16.  Furthermore, evidence suggests that children diagnosed before age 5 usually suffer from more severe forms of autistic spectrum disorder and benefit greatly from immediate and aggressive treatment.  Judge McGill observed that experts recognize "there is a window of opportunity approximately from ages three to six to make significant gains. Once this period comes to a close, the opportunity ceases to exist."  W.C. and S.C. o/b/o R.C. v. Summit Bd. Of Educ., N.J. Office of Admin. Law Dkt. No. EDS 1547-05 at 42.  The impact of special education decisions during this period is magnified and warrants this Court finding that the "previously received" language does not procedurally bar reimbursement in the preschool-aged context.

Having rejected Summit's assertion of a threshold "previously received" requirement, the Court turns to the issue of whether the IEP offered by the Summit afforded R.C. a FAPE.

The burden of demonstrating that a FAPE was offered falls on Summit. Oberti, 995 F.2d at 1219.  So Summit must show that the individualized educational program it offered was

"reasonably calculated" to enable R.C. to receive "meaningful educational benefits" proportionate to her "intellectual potential." Ridgewood Bd. of Educ. v. N.E., 172 F.3d at 247. The difficulty of grappling with this issue stems directly from how early on in the process the breakdown in cooperation between the parties occurred. Summit contends the IEP it presented to R.C.'s parents during the planning meeting on November 12th only served as an interim until they secured a permanent placement for her. That plan provided for 10 hours of "home instruction in the interim of being placed" starting on November 17, 2004, and ending on June 24, 2005. Iris Diamant, the Summit case manager assigned to R.C., and Suzanne Zadik, a Summit speech/language pathologist, testified that although the date of the November 12th IEP ran until June 24, 2005, Summit would not have allowed the "interim" IEP to stay in effect for the entire school year. Judge McGill made the factual determination that the "interim" IEP is the only plan that was developed by Summit with respect to R.C., and thus is the IEP subject to scrutiny. While the Court does not doubt the sincerity of Summit's position, the evidence before it does not support disturbing Judge McGill's finding.

And there is little question that the 10-hour per week "interim" IEP would not enable R.C. to receive "meaningful educational benefits" proportionate to her "intellectual potential." Dr. Bridget Taylor and Dr. Kevin Brothers, both testifying for R.C., concluded that the IEP was inadequate, and Summit's own admission that the IEP at issue was for the "interim" supports this. Diamant testified that R.C. would have been placed within two weeks of the November 12th meeting, but the record does not establish what level of services would have been provided if the parties had moved ahead cooperatively. The record is such that the Court must conclude Summit has failed to meet its burden that the IEP it offered R.C. was "reasonably calculated" to enable her to receive "meaningful educational benefits" proportionate to her "intellectual potential."

10

And because Summit did not provide a FAPE, it may be required to reimburse the costs of R.C.'s unilateral placement if the placement was appropriate under the IDEA.

Under <u>Florence County Sch. Dist. Four v. Carter</u>, 510 U.S. 7, 15 (U.S. 1993), the parents of a disabled child are entitled to reimbursement for a unilateral private placement "only if a federal court concludes both that the public placement violated IDEA and that the private school placement was proper under the Act." Summit contends Somerset Hills is not an appropriate placement under the Act because it does not offer speech and language therapy and is too far away from R.C.'s home. Judge McGill determined that the traveling time was 30 minutes, within the time limit suggested by Diamant, and that it was possible for Somerset Hills to integrate speech and language therapy into its therapy framework, as testified to by Dr. Brothers and Dr. Taylor. Diamant, testifying for Summit, agreed that Somerset Hills possibly could integrate speech and language therapy into its therapy framework. Accepting Judge McGill's factual findings as prima facie correct, the Court finds that Somerset Hills was an appropriate placement under the IDEA. The Court notes that although Somerset Hills did not provide language and speech therapy, it was a state-approved educational facility with a program specifically tailored to developmental disabilities. Furthermore, Judge McGill determined that the testimony of several witnesses demonstrated that there was no significant reason to doubt that Somerset Hills provided an adequate therapy framework. This Court sees no reason to disagree with Judge McGill's determination that Somerset Hills was an appropriate placement under the IDEA.

The primary role of the courts in IDEA cases is to make sure that the system on the ground is working, and the system only works when parents and school officials cooperate fully. Based on these considerations and guided by N.J.A.C. 6A:14-2.10(c), the Court finds, although

based on different legal grounds, that Judge McGill properly reduced Summit's reimbursement obligation by half. Judge McGill concluded that reimbursement in this case is subject to N.J.A.C. 6A:14-2.10(c); however, a reviewing court under 20 U.S.C. § 1415(i)(2)(A) derives its authority to reduce a reimbursement from its grant of discretion under 20 U.S.C. § 1415(i)(2)(C) to fashion "such relief as [it] determines is appropriate." The authority to "fashion relief" necessarily extends to reducing a reimbursement award upon a judicial finding of unreasonableness with respect to actions taken by the parents. Although not controlling in the preschool context, N.J.A.C. 6A:14-2.10(c) provides guidance:

> (c) The parents must provide notice to the district board of education of their concerns and their intent to enroll their child in a nonpublic school at public expense. The cost of reimbursement described in (b) above may be reduced or denied:
>
> 1. If at the most recent IEP meeting that the parents attended prior to the removal of the student from the public school, the parents did not inform the IEP team that they were rejecting the IEP proposed by the district;
>
> 2. At least 10 business days (including any holidays that occur on a business day) prior to the removal of the student from the public school, the parents did not give written notice to the district board of education of their concerns or intent to enroll their child in a nonpublic school;
>
> 3. If prior to the parents' removal of the student from the public school, the district proposed a reevaluation of the student and provided notice according to N.J.A.C. 6A:14-2.3(g) and (h) but the parents did not make the student available for such evaluation; or
>
> 4. Upon a judicial finding of unreasonableness with respect to actions taken by the parents.

The Court views the record in light of these provisions.

As to W.C. and R.C. giving Summit notice of their intent to enroll R.C. in a nonpublic school at public expense, Judge McGill concluded that there were several instances where they neglected their obligation to cooperate with Summit to develop an IEP. Without notifying Summit, they began contacting schools to secure an immediate private placement before the August 16th planning meeting. S.C. refused to sign the release allowing for early intervention

12

case coordinator Sangeeta Mehta to attend the meeting. They neglected to inform Summit at the planning meeting that they had already started contacting private schools. They arranged for an evaluation with Dr. Taylor without giving notice to Summit. R.C. began classes at Somerset Hills on September 29th, but her parents did not notify Summit that she had been accepted there until the day before her classes started.

And once R.C. had been placed, the cooperation between the parties completely broke down. At the November 12th meeting, Summit failed to give any consideration to W.C.'s objections to the IEP or the request to place R.C. with Somerset Hills permanently, and R.C.'s parents refused to sign the record release form. As to unreasonable actions taken by W.C. and R.C., the record reflects several instances where they hindered Summit's efforts without good cause. They assert S.C. signed and returned the release form provided to them at the November 12th meeting; however, the facts support Judge McGill's conclusion that the form was never returned because W.C. and S.C. could not produce a completed copy of the form, even though they kept copies of every communication between themselves and Summit. Their refusal to provide authorization to release R.C.'s records ground Summit's efforts to a screeching halt. Then, a mere 12 days after the November 12th meeting, and without exerting any effort to continue cooperating with Summit, R.C.'s parents retained an attorney and took the initial steps towards litigation by informing Dr. Kachmar-Desonne that they would be seeking reimbursement for R.C.'s placement at Somerset Hills. Based on these factual determinations, Judge McGill determined reimbursement should be reduced by half. The Court agrees with his factual determinations and finds that R.C.'s parents' unreasonable actions hindered the placement process, warranting the reduction imposed by Judge McGill.

## V. ATTORNEY'S FEES

In 1986, the IDEA was amended to permit a Court to award attorneys' fees to a parent or guardian who was the prevailing party in the due process litigation. 20 U.S.C. § 1415(e)(4)(B). R.C.'s parents have made an application to this Court for attorneys' fees under this provision, requesting a total of $74,869 in attorneys' fees and costs incurred at the administrative level. They have provided the Court with affidavits in support of the fee application, which include line-item billing records and supporting affidavits from three practicing special education attorneys. The Supreme Court has held that "the touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792-93 (1989). The Third Circuit has set out a two-prong test for determining whether a party was the prevailing party in IDEA litigation: (1) "whether plaintiffs achieved relief"; and (2) "whether there is a causal connection between the litigation and the relief from the defendant." Wheeler v. Towanda Area Sch. Dist., 950 F.2d 128, 131 (3d Cir. 1991). The first prong requires that plaintiff obtain "some of the benefit sought in a lawsuit, even though the plaintiff does not ultimately succeed in securing a favorable judgment." Id. The second prong is met "where even though the litigation did not result in a favorable judgment, the pressure of the lawsuit was a material contributing factor in bringing about judicial relief." Id.

As to the first prong, it is clear that R.C.'s parents obtained "some of the benefit sought" in the due process litigation. Judge McGill determined that Summit did not provide R.C. with a FAPE, entitling her parents to reimbursement for her unilateral placement at Somerset Hills. Even though Judge McGill reduced that reimbursement by half, the first prong requires only that W.C. and S.C. received "some of the benefit sought." As to the second prong, the record adequately demonstrates that "the pressure of the lawsuit was a material contributing factor in

bringing about judicial relief." The filing of the due process petition through counsel resulted in Judge McGill finding that the IEP did not provide R.C. a FAPE and that Somerset Hills was an appropriate placement. His decision effectively placed R.C. at Somerset Hills for the period of time at issue. It is appropriate in considering the remedial goals of fee shifting in statutes such as the IDEA to distinguish between the actions of the parents here, which led to a reduction in the reimbursement to them, and the good results obtained through professional services rendered by counsel that deserve compensation. Under the applicable law of this circuit, R.C.'s parents are prevailing parties within the meaning of the statute and entitled to an award of attorneys' fees and costs.

The Court must also determine a reasonable amount of attorneys' fees to award. In calculating the award, the Court must examine the record to ensure that the hours billed are not "unreasonable for the work performed." Washington v. Philadelphia County Court of Common Pleas, 89 F.3d 1031, 1037 (3d Cir. 1996). Summit has not directly addressed the certification and other supporting documentation provided to the Court as to reasonableness, having argued that the parents are not prevailing parties and thus no fee award should be made. The Court will decide the amount of fees after giving Summit an opportunity to address the requested amount.

## VI. CONCLUSION

For the above stated reasons, the Court affirms the August 2, 2006 decision of Administrative Law Judge Richard McGill in which he concluded that R.C.'s parents were entitled to reimbursement but reduced that reimbursement by half based on *N.J.A.C.* 6A:14-2.10(c). As required by the standard, this Court has reviewed the evidence in the record, as well as the ALJ's assessment of the arguments raised by the parties and his findings based on the testimony and written exhibits before him. Having done so, this Court denies both summary

judgment motions appealing that decision and grants W.C. and S.C. an award of attorney's fees as the prevailing parties in the litigation below.  The amount of the attorneys' fees award will be addressed in a separate ruling.  An appropriate order will be entered.


Dated: 12/31/07                                          /s/Katharine S. Hayden_

                                                         Katharine S. Hayden, U.S.D.J.